**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X
DR. GERALD FINKEL, as Chairman of the
Joint Industry Board of the Electrical Industry,

                            Plaintiff,                          **REPORT AND**
                                                                **RECOMMENDATION**

            - against -                                          16-4200 (DRH) (AKT)

POMALEE ELECTRIC CO., INC. and
FRANK DEPAOLA,

                            Defendants.
-----------------------------------------------------------X
**A. KATHLEEN TOMLINSON, Magistrate Judge:**

I.      PRELIMINARY STATEMENT

        Petitioner Dr. Gerald Finkel, as Chairman of the Joint Industry Board of the Electrical

Industry ("JIB"), commenced this action, pursuant to Section 502(g) of the Employee Retirement

Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, and Section 301 of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185, seeking to confirm and enforce an

arbitration award rendered pursuant to the terms of a collective bargaining agreement and the

terms of a Stipulation and Forbearance Agreement, between JIB and Respondents Pomalee

Electric Co., Inc. and Frank DePaola (collectively, "Respondents"). *See generally* Petition to

Confirm Arbitration Award ("Pet.") [DE 1]. To date, Respondents have neither responded to

Petitioner's confirmation action nor sought any relief from the arbitration award.

        On June 6, 2017, Petitioner filed a Motion for Default Judgment [DE 14] and Judge

Hurley referred that motion to this Court for a Report and Recommendation "as to whether

plaintiff has demonstrated that the allegations in the Complaint establish the defendants' liability

such that the motion for default judgment should be granted, and, if so, to determine the

appropriate amount of damages, costs, and/or fees, if any, to be awarded." Electronic Order of

June 7, 2017.  Based upon the applicable law as well as the information submitted by Petitioner, and for the reasons stated below, the Court respectfully recommends to Judge Hurley that the Petition to confirm the $406,746.97 arbitration award be GRANTED.

II.   BACKGROUND

    A.   **Factual Background**

        *1.   Petition*

The following facts are taken from the Petition and the accompanying exhibits and are assumed to be true for purposes of this motion.  JIB commenced the instant action through its Chairman, Gerald Finkel ("Petitioner"), the administrator of various employee benefit plans established and maintained pursuant to collective bargaining agreements between Local Union #3 of the International Brotherhood of Electical Workers, AFL-CIO, and employers engaged in the electrical, elevator, sign, television, and burglar alarm industries.   *See generally* Agreement and Working Rules (the "CBA") [DE 19-2].  According to the Petition, on or about June 18, 2015, JIB and Respondents entered into a Stipulation and Forbearance Agreement (the "Stipulation"), a copy of which is annexed to the Petition as Exhibit A.  *See id.* ¶ 1; *see also* Stipulation [DE 1-3], annexed as Exhibit A to the Petition.  Pursuant to the Stipulation, Respondents admit they are jointly and severally liable for $208,774.48 in contributions owed to employee benefit plans administered by JIB.  *Id.*  ¶ 1.  The amount owed under the Stipulation reflects $129,502.57 in JIB contributions owed, and $79,271.90 in Deferred Salary Plan ("DSP")[1] contributions owed for the payroll weeks ending April 15, 2015 through May 20, 2015.  *Id.* ¶ 1.  In the Stipulation, Respondents agreed to make a payment of $4,500 upon signing the

---

[1]       The distinction between JIB and DSP contributions will be discussed in greater detail below in the context of the arbitrator's award.

agreement and weekly payments thereafter of $4,500 beginning June 26, 2015 until the amount

owed under the Stipulation was paid in full. *Id*. ¶ 2. In addition to those payments, Respondents

also agreed to pay all weekly contributions as they became due. *Id*. ¶ 6. The Stipulation further

provided that if Respondents failed to make payments in accordance with the terms of the

Stipulation, then they would have five calendar days to cure the default after JIB sent written

notice of that default. *Id*. ¶ 9. If Respondents failed to cure the default, then JIB was entitled to

commence an action or arbitration, and to have a judgment entered against Respondents in the

District Court of the Eastern District of New York. *Id*. Under the terms of the Stipulation, in the

event of a default, Petitioner was entitled to recover the contributions owed, interest, liquidated

damages, arbitration fees, attorney's fees and costs. *Id*.

     According to the Petition, Respondents failed to make payments to Petitioner in

accordance with the Stipulation. *Id*. ¶ 3. Consequently, Petitioner initiated an arbitration against

Respondents at which point Stephen F. O'Beirne, Esq. (the "Arbitrator" or "O'Beirne") was

appointed to conduct the arbitration. *Id*. ¶¶ 4-5; *see* Arbitration Procedures and Rules Governing

Employer Delinquency Disputes and Audits ("Arbitration Procedures") [DE 23-1], III.A. The

proceeding took place on October 7, 2015, at which time witnesses were called and evidence was

presented. *Id*. ¶ 5. On October 10, 2015, the arbitrator rendered an award in favor of Petitioner

against Respondents in the amount of $406,746.97. *Id*. ¶ 6. Petitioner states that no application

to modify the award has been made. *Id*. ¶ 9. Through the Petition and Motion for Default

Judgment, Petitioner seeks an Order confirming the arbitrator's award and for entry of judgment

in conformity with that award. *Id*. ("Wherefore" clause).

### 2.   *Opinion and Award*

Petitioner has provided the Court with a copy of Arbitrator O'Beirne's Opinion and Award.  *See* Arbitrator's Opinion and Award, annexed as Exhibit B to the Affidavit of Christina A. Sessa, Esq. ("Sessa Aff. I") [DE 1-2] in support of the Petition.  Arbitrator O'Beirne stated at the outset of his decision that the proceeding concerned a claim for unpaid employee fringe benefit contributions pursuant to a collective bargaining agreement; ERISA, as amended, 29 U.S.C. §§ 1104, 1109, 1132, and 1145; and Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185.  *Id.*  O'Beirne determined that Pomalee is an "'employer' within the meaning of the CBA and the statutes," and that it is bound by the collective bargaining agreement with Local Union #3 of the International Brotherhood of Electrical Workers, AFL-CIO, covering the period May 8, 2013 through May 11, 2016 (the "CBA").  *Id.* at 1-2.  The Arbitrator found that, as an employer, Pomalee was required under the CBA to submit benefit contributions to employee benefit plans administered by JIB, including the Pension, Hospitalization and Benefit Plan of the Electrical Industry, the Dental Benefit Fund of the Electrical Industry, the Deferred Salary Fund of the Electrical Industry (the "DSP"), the Educational and Cultural Trust Fund of the Electrical Industry, the Annuity Plan of the Electrical Industry, the Vacation-Holiday Unemployment Plan of the Electrical Industry, the Health Reimbursement Account Plan of the Electrical Industry and the National Employees Benefit Fund.  *Id.* at 2.  Arbitrator O'Bierne stated that each of the aforementioned plans is an "employee benefit plan" and a "multiemployer plan" within the meaning of those terms under ERISA.  *Id.*  Under the CBA, JIB may also collect assessments, employee loan payments, contributions to fund the operations of the JIB and contributions to the following non-ERISA Plans:  the

Electrical Employers Self–Insurance Safety Plan, Committee on Political Education Fund, and Benefit and Wage Delinquency Fund. *Id*.

In his Opinion, Arbitrator O'Bierne explained that his authority to hear and decide the case arises from the Policy for the Collection of Delinquent Contributions and the Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits which were incorporated by reference into the CBA. *Id*. at 3. As set forth in the Petition, the arbitration proceeding took place on October 7, 2015. *Id*. Attorney Sessa appeared on behalf of JIB, and Frank DePaola appeared on behalf of Respondents in his capacity as principal of Pomalee. *Id*. JIB sought payment of the balance under the Stipulation, which represented delinquent JIB and DSP contributions for the payroll weeks ending April 15, 2015 through May 20, 2015. *Id*. at 4 n.2. JIB also sought delinquent DSP and JIB contributions for the payroll weeks ending on August 26, 2015 through September 30, 2015. *See id*. at 4. With regard to the DSP contributions, O'Beirne explained that the DSP requires employers, such as Pomalee, to send DSP contributions to Mercer Trust Company, "a third party record-keeper and investment manager retained by the DSP for such purposes." *Id*. at 3 n1. All other payroll records and contributions owed to JIB are sent directly to JIB. *Id*.

In advance of the hearing, JIB's Attorney, Christina Sessa, submitted documentation setting forth the basis for Respondents' liability. Opinion and Award at 4. The Arbitrator found the documentation to be in compliance with the requirements of the CBA and Respondents did not object to the documents being introduced as evidence. *Id*. Respondents did not dispute that they had failed to pay the contributions owed, nor did they contest the accuracy of JIB's calculations. *Id*. Moreover, the Arbitrator observed that in the Stipulation, Pomalee and DePaola acknowledged joint and several liability for the amount owed under the agreement. *Id*.

On reviewing the record evidence, the Arbitrator issued the following determination:

> Respondents violated the CBA, ERISA and the LMRA by failing to timely remit contributions required by the CBA for the payroll periods ending August 26, 2015 through and including September 30, 2015. I further find Respondents are in breach of the Stipulation. Respondents raised no viable defense to [ ] JIB's claims.

With regard to an award, Arbitrator O'Beirne held that Respondents were liable to

> Pay the JIB the principal amount of one hundred twenty-four thousand three hundred eighty dollars and seventeen cents ($124,380.17) in delinquent contributions for the payroll weeks ending August 26, 2015 through and including September 30, 2015.

> Pay Mercer the principal amount of seventy-four thousand nine hundred ninety-three dollars and one cent ($74,993.01) in delinquent contributions for the payroll weeks ending August 26, 2015 through and including September 30, 2015.

> Pay JIB the amount of one hundred thirty-six thousand seven hundred seventy-four dollars and forty-eight cents ($136,774.48) representing the balance owed under the Stipulation for the payroll weeks ending April 15, 2015 through and including May 20, 2015.

> Pay the JIB additional interest on the unpaid contributions in the amount of four hundred nineteen dollars and seventy-eight cents ($419.78).

> Pay the JIB liquidated damages on the unpaid contributions in the amount of sixty-seven thousand two hundred twenty-nine dollars and fifty-three cents ($67,229.53).

> Pay the JIB its attorney's fees and administrative costs incurred in this matter in the amount of eight hundred fifty dollars ($850.00).

> Pay the JIB the costs of this arbitration proceeding in the amount of two thousand one hundred dollars ($2,100.00).

> As of the date of this Award, the Employer's total obligation to the JIB and Mercer for the periods covered by this arbitration proceeding is four hundred six thousand seven hundred forty-six dollars and ninety-seven cents ($406,746.97).

> Interest and liquidated damages shall continue to accrue on the principal amounts owed until paid in full. The Employer is

responsible for any costs, including reasonable attorney's fees, incurred by the JIB in enforcing this Opinion and Award.

*Id*. at 5-6.

**B.   Procedural History**

Petitioner commenced this action on July 28, 2016 by filing the Petition [DE 1] along with the July 18, 2016 supporting Affidavit of Attorney Christina Sessa, in-house counsel for the Petitioner.  Sessa Aff. I.  Service on Pomalee was effected through personal service on the Secretary of State of the State of New York on August 8, 2016.  DE 9.  According to the Affidavit of Service, Petitioner's process server attempted to personally serve Frank DePaola with the petition at his actual place of business — 330 West 39th Street, #403, New York, 10018 — on August 5, 2016 at 11:52 a.m., August 8, 2016, at 10:06 a.m., August 9, 2016 at 12:54 p.m. and August 11, 2016 at 2:28 p.m.  DE 8.  Each time, however, the process server received no response to repeated knocks on the office door.  *Id*.  On August 11, 2016, the date of the last attempt at personal service, the process server affixed a copy of the Petition and Affidavit on the office door.  *Id*.  That same day, he mailed a copy of the papers to DePaola's business address by first-class mail in a sealed envelope with the words "Personal and Confidential" placed on it, and without any indication on the outside that it was from an attorney.  *Id*.

After Respondents failed to appear in this action or otherwise respond to the Petition, the Clerk of the Court entered notations of default as to Pomalee and DePaola.  DE 13.  On June 6, 2017, Petitioner filed a Motion for Entry of Default Judgment against Pomalee and DePaola.  DE 14.  That motion was served on Respondents at the West 39th Street address in New York City.  DE 22.[2]

---

[2]   According to the Affidavit of Service, the Motion for Default Judgment was served on Respondents on May 15, 2017.  DE 22.  The Court found this timing somewhat odd in light of

Judge Hurley issued an Order on June 7, 2017 referring Petitioner's Motion for Default Judgment to this Court for a Report and Recommendation "as to whether plaintiff has demonstrated that the allegations in the Complaint establish the defendants' liability such that the motion for default judgment should be granted, and, if so, to determine the appropriate amount of damages, costs, and/or fees, if any, to be awarded."   Electronic Order of June 7, 2017.

## III.   LEGAL STANDARD

A petition to confirm an arbitration award should be "treated as akin to a motion for summary judgment based on the movant's submissions."   *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 109 (2d Cir. 2006).  Although a party's "failure to contest issues not resolved by the record will weigh against it," where, as here, the non-movant has not responded to the petition to confirm, the court "'may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial,'" and that the movant is entitled to summary judgment.  *Id.* at 109–10 (quoting *Vt. Teddy Bear Co., Inc. v. 1–800–BEARGRAM Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (internal quotation marks and citations omitted)) (citing *United States v. One Piece of Property*, 5800 S.W. 74th Ave., Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004)); *see e.g.,Trustees of the Ne. Carpenters Health v. ITO Installations, Ltd.,* No. CV164558, 2017 WL 564749, at *2 (E.D.N.Y. Jan. 25, 2017)*, report and recommendation adopted sub nom. Trustees of the Ne. Carpenters Health v. ITO Installations Ltd.,* No. 16-CV-4558, 2017 WL 563982 (E.D.N.Y. Feb. 10, 2017); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt.*

---

the fact that the Clerk of the Court did not issue the Certificate of Default against the two Respondents until June 2, 2017.  *See* DE 13.  However, Petitioner filed a subsequent Affidavit of Service stating that the Certificate of Default was indeed served on Respondents on June 6, 2017. DE 18.  The Court is therefore satisfied that Petitioner has complied with Local Civil Rule 55.2(b).

*Cooperation, Pension & Welfare Funds v. Pisgah Builders, Inc.*, No. 15CV2547, 2016 WL 8711353, at *2-*3 (E.D.N.Y. June 23, 2016), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension v. Pisgah Builders, Inc*., No. 15CV2547, 2016 WL 8711345 (E.D.N.Y. Sept. 30, 2016); *Trustees of Empire State Carpenters Annuity v. Baroco Contracting Corp*., No. 15-5690, 2016 WL 2893239, at *2 (E.D.N.Y. April 19, 2016) (collecting cases), *report and recommendation adopted sub nom. Trustees of Empire State Carpenters Annuity v. Baroco Contraction Corp*., 2016 WL 2889007 (E.D.N.Y. 2016); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Gregory*, No. 14-CV-2900, 2015 WL 1611307, at *3 (E.D.N.Y. Apr. 10, 2015); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. Overhead Door Co. of Erie Cty*., No. 12-CV-5652, 2013 WL 4807087, at *3 (E.D.N.Y. Sept. 9, 2013); *Trustees for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Odessy Construction Corp*, No. 1:14-CV-1560, 2014 WL 3844619, at *2 (S.D.N.Y. Aug. 1, 2014); *Trs. of Empire State Carpenters v. Town & Country Wood Flooring LLC*, No. 13-40, 2013 WL 4807110, at *1-3 (E.D.N.Y. Sept. 9, 2013); *Travel Wizard v. Clipper Cruise Lines*, No. 06 Civ. 2074, 2007 WL 29232, at *2 (S.D.N.Y. Jan.3, 2007).  "Even unopposed motions for summary judgment must 'fail where the undisputed facts fail to show that the moving party is entitled to judgment as a matter of law.'"  *D.H. Blair*, 462 F.3d at 110 (quoting *Vt. Teddy Bear Co.*, 373 F.3d at 244).

        "Nonetheless, in the context of a petition to confirm an arbitration award, the burden is not an onerous one."  *1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc*., No. 13 CIV. 2608, 2014 WL 840965, at *6 (S.D.N.Y. Mar. 4, 2014) (quoting

*N.Y.C. Dist. Council of Carpenters Pension Fund v. Angel Constr. Group, LLC*, No. 08 Civ. 9061, 2009 WL 256009, at *3 (S.D.N.Y. Feb. 2, 2009)); *see Trustees of the Ne. Carpenters Health*, 2017 WL 564749, at *3 ("[T]he showing required to avoid summary confirmation of the award is very high."); *see also Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds*, 2016 WL 8711353, at *3 ("[I]n 'evaluating a petition to confirm an arbitration award, only a barely colorable justification for the outcome reached by the arbitrators is necessary to confirm the award.'") (collecting cases). The Second Circuit has "repeatedly recognized the strong deference appropriately due arbitral awards and the arbitral process, and has limited its review of arbitration awards in obeisance to that process." *Porzig v. Dresdner, Kleinwort, Benson, N. Am. LLC*, 497 F.3d 133, 138–39 (2d Cir. 2007); *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 388 (2d Cir. 2003) ("It is well established that courts must grant an [arbitrator's] decision great deference.").

The confirmation of an arbitration award generally is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." *D.H. Blair*, 462 F.3d at 109 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984)) (internal quotation marks omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed 'if a ground for the arbitrator's decision can be inferred from the facts of the case.'" *Id.* at 110 (quoting *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir. 1991)). "Only a 'barely colorable justification for the outcome reached' by the arbitrators is necessary to confirm the award." *Id.* (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Serv. Emps. Int'l Union*, 954 F.2d 794, 797 (2d Cir. 1992)). Accordingly, "a court's review of an arbitration award is '"severely limited" so as not to frustrate the goals of arbitration—namely to settle disputes efficiently and avoid long and expensive litigation.'"

10

*Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Corp., Pension & Welfare Funds v. AG Const. Corp.*, No. CV 13-5087, 2014 WL 3491398, at *4 (E.D.N.Y. Apr. 28, 2014) (quoting *Local 339 United Serv. Workers Union v. Advanced Ready Mix Corp.*, No. 12-CV-4811, 2013 WL 685447, at *2 (E.D.N.Y. Feb. 24, 2013)), *report and recommendation adopted as modified, on unrelated grounds, sub nom. Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. AG Const. Corp.*, No. 13-CV-5087, 2014 WL 3489812 (E.D.N.Y. July 10, 2014).

"[T]he federal policy in favor of enforcing arbitration awards is particularly strong with respect to arbitration of labor disputes." *Supreme Oil Co., Inc. v. Abondolo*, 568 F. Supp. 2d 401, 406 (S.D.N.Y. 2008) (quoting *New York Hotel & Motel Trades Council, AFL–CIO v. Hotel St. George*, 988 F. Supp. 770, 774 (S.D.N.Y. 1997)).  The United States Supreme Court has recognized that the LMRA expresses a "federal policy of settling labor disputes by arbitration" which "would be undermined if courts had the final say on the merits of the awards." *United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 36 (1987) (quoting *Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 596 (1960)) (internal quotation marks omitted).  Accordingly, "[j]udicial review of a labor-arbitration decision pursuant to [a collective bargaining] agreement is very limited." *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *Garvey v. Roberts*, 203 F.3d 580, 583 (9th Cir 2000)); *see also Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir. 1997) (holding that "[a]rbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation") (quoting *Folkways Music Publishers, Inc. v. Weiss,* 989 F.2d 108, 111

(2d Cir. 1993)); *Supreme Oil Co., Inc.*, 568 F. Supp. 2d at 405 (stating judicial review of an arbitration award under Section 301 of the LMRA is "extremely deferential").

When reviewing an award under Section 301 of the LMRA, a court must confirm an arbitration award so long "'as it draws its essence from the collective bargaining agreement' and is not the arbitrator's 'own brand of industrial justice.'" *First Nat'l Supermarkets, Inc. v. Retail, Wholesale & Chain Store Food Emps. Union Local 338, Affiliated with the Retail, Wholesale & Dep't Store Union, AFL-CIO*, 118 F.3d 892, 896 (2d Cir. 1997) (quoting *Misco*, 484 U.S. at 36); *see Int'l Bhd. of Elec. Workers, Local 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998) (quoting same). "Courts are not authorized to review the arbitrator's decision on the merits despite allegations that the decision rests on factual errors or misinterprets the parties' agreement." *Major League Baseball Players Ass'n*, 532 U.S. at 509 (citing *Misco*, 484 U.S. at 36). "Even if the Court is convinced that the arbitrator 'committed serious error,' the award should not be vacated so long as the arbitrator is 'even arguably construing or applying the contract and acting within the scope of his authority.'" *Supreme Oil Co.*, 568 F. Supp. 2d at 406 (quoting *Misco*, 484 U.S. at 38–39); *see Major League Baseball Players Ass'n*, 532 U.S. at 509 (holding that "improvident, even silly, factfinding does not provide a basis for a reviewing court to refuse to enforce the award") (internal quotation marks omitted) (quoting *Misco*, 484 U.S. at 39).[3]

Although the Federal Arbitration Act ("FAA")

---

[3]    "Courts have shown similar judicial restraint regarding arbitration awards under ERISA." *Trustees of The New York City Dist. Council of Carpenters Pension Fund v. TNS Mgmt. Servs., Inc.*, No. 13-CV-2716, 2014 WL 100008, at *2 (S.D.N.Y. Jan. 10, 2014) (collecting cases); *Trustees of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, Apprenticeship, Journeyman, Retraining, Educ. & Indus. Fund v. Mountaintop Cabinet Mfr. Corp.*, No. 11-CV-8075, 2012 WL 3756279, at *2 (S.D.N.Y. Aug. 29, 2012) (same).

> does not apply to "contracts of employment of . . . workers engaged in foreign or interstate commerce," 9 U.S.C. § 1, . . . federal courts have often looked to the Act for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the [LMRA] . . . empowers the federal courts to fashion rules of federal common law to govern "[s]uits for violation of contracts between an employer and a labor organization" under the federal labor laws.

*Misco*, 484 U.S. at 40 n. 9 (internal citations omitted) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957)) (citing *Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969); *Pietro Scalzitti Co. v. International Union of Operating Engineers, Local No. 150*, 351 F.2d 576 (7th Cir. 1965)); *see N.Y.C. Dist. Council of Carpenters Pension Fund v. B & A Interiors, Ltd.*, No. 07 Civ. 5620, 2009 WL 233969, at *2 (S.D.N.Y. Jan. 23, 2009). The FAA "provides expedited judicial review to confirm, vacate, or modify arbitration awards." *Hall Street Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 576 (2008). Under Section 9 of the FAA, a court "must" confirm an arbitration award unless it is vacated, modified, or corrected as prescribed under

> Sections 10 and 11 of the FAA. *See* 9 U.S.C. § 9; *Hall*, 552 U.S. at 576. Specifically, Section 10 lists grounds for vacating an award, including where the award was procured by "corruption," "fraud," or "undue means," and where the arbitrators were "guilty of misconduct," or "exceeded their powers." Under § 11, the grounds for modifying or correcting an award include "evident material miscalculation," "evident material mistake," and "imperfect[ions] in [a] matter of form not affecting the merits."

*Hall*, 552 U.S. at 576 (citing 9 U.S.C. §§ 10-11).

## IV.   DISCUSSION

### A.      Service of Process

As set forth above, Petitioner served Pomalee through personal service on the Secretary of State of the State of New York in accordance with Fed. R. Civ. P. 4. *See* DE 9. Petitioner served the individual Respondent, Frank DePaola, through the "nail and mail" method, a form of

substitute service.  *See* DE 8.  Fed. R. Civ. P. Section 4(e)(l) permits service by "following the

state law for serving summons in an action brought in courts of general jurisdiction in the state

where the district court is located or where service is made."  Service of process in New York is

governed by N.Y. C.P.L.R. § 308, which states that service may be made by personally serving

the summons and complaint on the defendant, or by delivering the summons and complaint to a

person of suitable age and discretion and by mailing the summons to the defendant.

N.Y. C.P.L.R. § 308.  If a plaintiff is unable to effect service through either of these methods,

then the plaintiff may utilize the "nail and mail" option employed by the process server in the

instant case.  In this regard, N.Y. C.P.L.R. Section 308(4) states that

> where service under paragraphs one and two cannot be made with
> due diligence, [service may be completed] by affixing the summons
> to the door of either the actual place of business, dwelling place or
> usual place of abode within the state of the person to be served and
> by either mailing the summons to such person at his or her last
> known residence or by mailing the summons by first class mail to
> the person to be served at his or her actual place of business[.]

N.Y. C.P.L.R. § 308(4).  Accordingly, to take advantage of the "nail and mail" method of

service, the plaintiff must have attempted, with due diligence, to have effected service pursuant

to the two alternative methods set forth in paragraphs one and two of C.P.L.R. § 308.  To satisfy

the "due diligence" standard, courts "have required approximately three attempts at service,

optimally on non-consecutive days."  *Weifang Xinli Plastic Prod. v. JBM Trading Inc*., No. 11-

2710, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014) (collecting cases), *aff'd sub nom.*

*Weifang Xinli Plastic Prod. Co. v. JBM Trading Inc.*, 583 F. App'x 24 (2d Cir. 2014).

The Court finds that the process server's efforts here constitute "due diligence" within the

meaning of the term under C.P.L.R. § 308.  Petitioner's process server attempted to personally

serve DePaola at his actual place of business on four separate occasions:  August 5, 2016 at

11:52 p.m.; August 8, 2016 at 10:06 a.m.; August 9, 2016 at 12:54 p.m.; and August 11, 2016, at 2:38 p.m.  DE 8.   Each attempt to personally serve DePaola occurred at a different time but took place when it would be reasonable to assume that the respondent would be at work. Moreover, two of the attempts took place on non-consecutive days.  Accordingly, the Court concludes that DePaola was properly served with the Petition.  *See Allstate Ins. Co. v. Rozenberg*, 771 F. Supp. 2d 254, 262 (E.D.N.Y. 2011) (citing *Nassau County v. Gallagher*, 43 A.D.3d 972, 841 N.Y.S.2d 696 (2d Dep't 2007)) ("Moreover, even without speaking to a neighbor or mailman, due diligence can be satisfied when there are quality attempts at delivery that include times in which it is likely that the person to be served would be available."); *see also Westchase Residential Assets II, LLC v. Gupta*, No. 14-1435, 2016 WL 3688437, at *4 (E.D.N.Y. July 7, 2016) (quoting *Estate of Waterman*, 46 A.D.3d at 66, 843 N.Y.S.2d at 464-65 (2d Dep't 2007)) (citing *Weifang Xinli Plastic Products v. JBM Trading Inc*., No. 1:11-CV-2710, 2014 WL 4244258, at *3 (E.D.N.Y. Aug. 26, 2014), *aff'd by* 583 Fed. App'x 24 (2d Cir. 2014); *State Higher Educ. Servs. Corp. v. Sparozic*, 35 A.D.3d 1069, 1071, 826 N.Y.S.2d 493 (3d Dep't 2006); *Johnson v. Waters*, 291 A.D.2d 481, 738 N.Y.S.2d 369, 370 (2d Dep't 2002)) ("'due diligence' may be satisfied with a few visits on different occasions and at different times to the defendant's residence or place of business when the defendant could reasonably be expected to be found at such location at those times.") (internal quotation marks omitted); *Gross Found., Inc. v. Goldner,* No. 12-1496, 2012 WL 6021441, at *4 (E.D.N.Y. Dec. 4, 2012) (determining that plaintiff exercised due diligence where "service was attempted at defendant's residence on a Thursday evening at 6:40 pm, the following Saturday morning at 11:17 am, and the following Tuesday morning at 7:18 am.").

### B.    Confirmation of the Arbitration Award

Here, Petitioner seeks confirmation of the Arbitrator's Opinion and Award as issued, in the sum of $406,746.97.  *See* Pet. ¶ 6.  Included in this total are the following amounts:

> (1)    $124,380.17 in delinquent JIB Contributions and $74,993.01 in delinquent DSP contributions for the pay roll weeks ending August 26, 2015 through and including September 30, 2015;
>
> (2)    $136,774.01 representing the balance owed under the Stipulation for the payroll weeks ending April 15, 2015 through and including May 20, 2015;
>
> (3)    $419.78 in interest on the delinquent contributions;
>
> (4)    $67,229.53 in liquidated damages;
>
> (5)    $850 in legal fees and administrative costs; and
>
> (6)    $2,100 in arbitration costs.

Opinion and Award at 5-6; *see* Sessa Aff. I ¶ 4; *see also* March 27, 2017 Affidavit of Christina A. Sessa, Esq. submitted in support of Motion for Default Judgment ("Sessa Aff. II") [DE 14-2] ¶ 4.

Considering Petitioner's submission in light of the foregoing case law, the Court concludes that Petitioner has met the burden of demonstrating that there is no genuine issue of material fact precluding summary judgment on the Petition to confirm Arbitrator O'Beirne's Opinion and Award.  As a preliminary matter, the Court notes that JIB's Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits provides that the policy applies to "any 'Dispute' that is referred to arbitration by the JIB."  Arbitration Procedures, II.A. The policy defines "Dispute" as:

> any claim by the JIB against an Employer, related to the Employer's obligation to contribute to the Funds, including but not limited to Audits, Delinquencies, interest, liquidated damages, and attorney's fees and costs (not including claims for withdrawal liability).

*Id*. I.K.  The policy further provides that

> [t]he JIB, with the approval of the Trustees, shall appoint a panel of more than one Neutral Arbitrator(s). Each dispute shall be assigned, on a rotational basis, to the next Neutral Arbitrator on the panel to hear and determine.

*Id.* III.A.  The instant case involves a "dispute" as the term is defined by the Arbitration Procedures, and that dispute was appropriately referred to a Neutral Arbitrator, Arbitrator O'Beirne.

Moreover, O'Beirne's decision provides more than "a barely colorable justification for the outcome reached."  *See D.H. Blair*, 462 F.3d at 110 (quoting *Landy Michaels Realty Corp. v. Local 32B–32J, Service Employees Int'l Union,* 954 F.2d 794, 797 (2d Cir. 1992)).  Prior to issuing his Opinion and Award, O'Beirne conducted a proceeding at which time witnesses were called and evidence was presented.  *See* Pet. ¶ 5; Opinion and Award at 3.  In advance of the hearing, counsel for JIB submitted a Prehearing Memorandum of Law setting forth, "in detail," the basis for Respondents' liability.  Opinion and Award at 3; *see* Claimant's Prehearing Memorandum of Law ("Claimant's Mem.") [DE 14-3 at 30], annexed as Ex. A to Petitioner's Motion for Default Judgment.  Attached to the Claimant's Memorandum is a spreadsheet of the contributions owed, interest accrued and liquidated damages.  *See* Summary Spreadsheet [DE 14-3 at 52-53], annexed as Ex. A to Claimant's Mem.  According to the Opinion and Award, an updated spreadsheet was submitted into evidence at the arbitration.  Opinion and Award 3.  Arbitrator O'Beirne noted that Petitioner also supplied "all supporting documents including invoices, payroll records, and delinquency/ default notices."  *Id.*  O'Beirne determined that Petitioner's records complied with the requirements not only of the CBA, but the documents establishing the Funds, and ERISA as well.  *Id.*  Moreover, Frank DePaola actually participated in the arbitration proceeding in his capacity as Principal of Pomalee.  *Id.*  DePaola did not object to Petitioner's documentary evidence nor to the calculations of the amounts owed.  *Id.*

In his findings, the Arbitrator stated that Respondents were bound by the CBA and that based on the evidence presented, Respondents had violated the CBA, ERISA and the LMRA "by failing to timely remit contributions required by the CBA for the payroll periods ending August 26, 2015 through and including September 30, 2015." *Id*. at 4. The Arbitrator further determined that Respondents had breached the Stipulation by failing to make timely payments required under the Stipulation and/or by failing to remain current on Respondents' contribution obligations under the CBA -- also required by the Stipulation. *Id*. at 5.

"Where an arbitrator's award draws its essence from the collective bargaining agreement, . . . the court must affirm the award so long as the arbitrator's decision is plausibly grounded in the parties' agreement." *P & B Specialities*, 2015 WL 9943252, at *4 (quoting *Saint Mary Home, Inc., v. Service Emp. Int 'l Union*, 116 F.3d 41, 44 (2d Cir. 1997)) (citing *Wackenhut Corp. v. Amalgamated Local 515*, 126 F.3d 29, 31–32 (2d Cir. 1997)) (internal quotation marks and citations omitted). Here, the Arbitrator's Opinion and Award draws its essence from the operative "Agreement and Working Rules" ("CBA"), effective May 8, 2013 until May 11, 2016. *See generally* CBA; *see also id*. at Article I. The Court notes that the CBA contains a section at the end of the agreement that applies to the Expeditor's Division of Local Union 3. *See* Expeditor's Division of the CBA ("Expeditor's Division"). The CBA requires Respondent, among other things, to remit weekly certain percentages of the standard gross wages to the plans in the manner set forth in Article II and Article VII of the CBA, and Article II of the portion of the CBA pertaining to the Expeditor's Division. Moreover, the Arbitrator's decision is grounded in: (1) the uncontroverted evidence presented at the arbitration hearing that Respondents failed to pay contributions to the Funds for the period of August 26, 2015 through September 30, 2015, and did not fulfill their obligations under the Stipulation; and (2) the Collection Policy, which

entitles the Funds to recover, "any unpaid Contributions, interest, an amount equal to the greater of the interest on, or twenty percent of, the unpaid Contributions as of the filing of the complaint and thereafter ("Liquidated Damages"), reasonable attorneys' fees and costs, and other remedies to the extent permitted by Section 502(g)(2) of ERISA."  Policy for the Collection of Delinquent Contributions ("Collection Policy") [DE 19-1], Article I ¶ 2.

Section 502(g)(2) of ERISA, as referenced in the Collection Policy, provides that:

(2) In any action under this subchapter by a fiduciary for or on behalf of a plan to enforce section 1145 of this title in which a judgment in favor of the plan is awarded, the court shall award the plan--

(A) the unpaid contributions,

(B) interest on the unpaid contributions,

(C) an amount equal to the greater of--

(i)     interest on the unpaid contributions, or

(ii)    liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),

(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and

(E) such other legal or equitable relief as the court deems appropriate.

For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132; *see Trustees of Empire State Carpenters Annuity v. Fourmen Constr.*, Inc., No. 15-CV-3252, 2016 WL 146245, at *3 (E.D.N.Y. Jan. 13, 2016) (confirming arbitration award which drew its essence from the CBA and was "based upon uncontroverted evidence" that

the respondent failed to pay delinquent contributions awarded by the arbitrator, and where the Collection Policy "entitles the Funds to recover the additional amounts for interest, liquidated damages, attorneys' fees, the arbitrator's fee, and audit costs"); *P & B Specialities*, 2015 WL 9943252, at *4 (confirming arbitrator's order which "draws its essence from the CBA and the Collection Policy").  Moreover, under the Stipulation, if Respondents fail to cure the default, "JIB shall be entitled to bring an action or arbitration and have judgment entered against [Respondents] in the United States District Court, Eastern District of New York or such other court of competent jurisdiction," which Petitioner has done here.  Stipulation ¶ 9.

As set forth above, in advance of the arbitration, Petitioner submitted a Prehearing Memorandum of Law setting forth the basis for Respondents' liability.  Attached to the Memorandum as an Exhibit is a "Joint Industry Board Stipulations File Detail," itemizing payments made towards the $208,774.48 in contributions owed under the Stipulation, as well as the remaining balance.  Joint Industry Board Stipulations File Detail [DE 14-3 at 72-73]. Claimant's Mem., Ex. D.  According to the "Stipulations File Detail," Respondents made 15 payments of $4,500 up until September 25, 2015, at which time the payments ceased, leaving a balance of $141,274.48.  *Id*.  Also attached to the Claimant's Memorandum is a copy of the Notice of Default sent in accordance with ¶ 9 of the Stipulation.  *See* Notice of Default [DE 14-3 at 75] annexed as Ex. E to Claimant's Mem.  The August 26, 2015 Notice addressed to Frank DePaola was sent via facsimile, as required by the Stipulation, and informed the Respondents that they owed eight weeks of JIB contributions and nine weeks of DSP contributions.  *Id*.  The Notice further cautioned Respondents, in accordance with the Stipulation, that they had "five (5) days to cure their default or legal action would be commenced to collect the delinquent

20

contributions, interest, legal fees and costs and liquidated damages equal to 20% of the unpaid contributions." *Id*.

Petitioner also submitted with the Memorandum copies of invoices setting forth the amount of JIB contributions setting forth the amount of DSP contributions owed during the relevant time period. *See* Contribution Invoices annexed as Exhibit B [DE 14-3 at 55-62] to Claimant's Mem.; *see also* DSP Payroll Inquiry [DE 14-3 at 64] annexed as Ex. C to Claimant's Mem. A review of Petitioner's calculations for interest owed and liquidated damages reveals that, consistent with the JIB Collection Policy, Petitioner applied an interest rate of 3% on the unpaid contributions and assessed liquidated damages at the rate of 20% of unpaid contributions. *See* Collection Policy, Article 1, ¶ 2; *see id*. Article II(E), ¶¶ 1-2. The Court has not reconstructed these calculations. "However, even where 'it is unclear what formula or percentage the arbitrator used' in reaching an amount, if the court can infer 'that the arbitrator had some basis—documentary, testimonial, or otherwise—on which to determine' the amount of interest, that amount should be awarded.'" *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labormanagement Cooperation, Pension & Welfare Funds v. Town & Country Wood Flooring LLC,* No. 13-CV-0040, 2013 WL 4807110, at *7 (E.D.N.Y. Sept. 9, 2013) (quoting *Trustees of the Local 807 Labor Mgmt. Health Fund v. Express Haulage Co*., No. 07CV4211, 2008 WL 4693533, at *6 (E.D.N.Y. Oct. 23, 2008)).

Lastly, in connection with attorney's fees and costs, Petitioner submitted to the Arbitrator a copy of an Invoice printed on JIB letterhead dated September 29, 2015 which set forth an arbitration fee of $700, administrative fee of $250, and attorney's fees of $600, representing two hours billed by Attorney Christina Sessa at a rate of $300 per hour. Invoice [DE 14-3 at 80] annexed as Ex. F to Claimant's Mem. According to the Memorandum, Attorney Sessa graduated

from the Benjamin N. Cardozo School of Law in 1994 and has been engaged in the practice of employee benefits law since 2002.  Claimant's Mem. ¶ 64.  Attorney Sessa states that she has "20 years of litigation experience, including twelve years on behalf of the Joint Industry Board." *Id*.

The Court notes that prevailing rates for experienced attorneys in the Eastern District of New York range from approximately $300 to $400 per hour.  *Konits v. Karahalis*, 409 Fed. App'x 418, 422-23 (2d Cir. 2011) (summary order) (quoting *Konits v. Valley Stream Cebt. High School Dis*t., No. 1-6763, 2010 WL 2076949, at *2 (E.D.N.Y. May 19, 2010)) (citing *Simmons v. New York City Transit Auth*., 575 F.3d 170, 174 (2d Cir. 2009)); *see Am. Fire & Cas. Co. v. Scott Elec. Servs., LLC*, No. CV153111, 2017 WL 395207, at *2 (E.D.N.Y. Jan. 9, 2017) (collecting cases), *report and recommendation adopted*, 2017 WL 374728 (E.D.N.Y. Jan. 25, 2017); *see also Incredible Foods Grp., LLC v. Unifoods, S.A. De C.V.*, No. 14-CV-5207, 2016 WL 4179943, at *3 (E.D.N.Y. Aug. 5, 2016) (collecting cases); *Valdez v. H & S Rest. Operations, Inc.*, No. 14 CV 4701, 2016 WL 3079028, at *8 (E.D.N.Y. Mar. 29, 2016) (collecting cases), *report and recommendation adopted*, 2016 WL 3087053 (E.D.N.Y. May 27, 2016); *OneWest Bank, N.A. v. Denham* No. CV 14-5529, 2015 WL 5562980, at *12 (E.D.N.Y. Aug. 31, 2015) (quoting *Claudio v. Mattituck–Cutchogue Union Free Sch. Dist*., No. 09 Civ. 5251, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014)), *report and recommendation adopted by* 2015 WL 5562981 (E.D.N.Y. Sept. 21, 2015); *Trustees of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation Pension & Welfare Funds v. L&P Interiors, Inc.*, No. CV 14-3316, 2015 WL 5562316, at *13 (E.D.N.Y. Aug. 14, 2015), *report and recommendation adopted by* 2015 WL 5562340 (E.D.N.Y. Sept. 18, 2015); *Claudio*, 2014 WL 1514235, at *14 (E.D.N.Y. Apr. 16, 2014) (collecting cases).  The Court finds that Christina Sessa is an

experienced attorney and that the number of hours she billed in connection with this case is reasonable.  Finally, with regard to the administrative costs and the arbitration fee awarded, courts typically award "those reasonable out-of-pocket expenses incurred by the attorney and which are normally charged fee-paying clients." *Reichman v. Bonsignore, Brignati & Mazzotta, P.C.*, 818 F.2d 278, 283 (2d Cir.1987).  Based on the Petitioner' submission, the Court finds no reason to deviate from the arbitrator's award as to attorney's fees and costs.

To the extent Arbitrator O'Beirne , in rendering the Award, may have relied upon materials that have not been provided to the Court, "there is no reason to doubt the arbitrator's interpretation of those materials." *Trs. of Empire State Carpenters Annuity, Apprenticeship, Labor-Mgmt. Cooperation, Pension & Welfare Funds v. FMC Constr. LLC*, No. 13-CV-923, 2014 WL 1236195, at *12 (E.D.N.Y. Feb. 12, 2014) (quoting *Trustees of New York City Dist. Council of Carpenters Pension Fund v. Ferran Devt. Corp*., No. 13 CIV. 1482, 2013 WL 2350484, at *4 (S.D.N.Y. May 30, 2013), *report and recommendation adopted sub nom. Trustees of the New York Council of Carpenters Pension Fund v. Ferran Dev. Corp*., No. 13 CIV. 1482 (LAK), 2013 WL 12109396 (S.D.N.Y. June 24, 2013)) (citing *Trustees of New York City Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc*., No. 12 CIV. 005, 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012)) (finding no impropriety in arbitration award despite the court not possessing all evidence that was before the arbitrator), *report and recommendation adopted by* 2014 WL 1236195 (E.D.N.Y. Mar. 25, 2014); *see Trs. of N.Y.C. Dist. Council of Carpenters Pension Fund v. Dejil Sys., Inc.*, No. 12-CV-005, 2012 WL 3744802, at *3 (S.D.N.Y. Aug. 29, 2012); *see also Trustees of the Ne. Carpenters Health v. ITO Installations, Ltd*., No. CV164558, 2017 WL 564749, at *3 (E.D.N.Y. Jan. 25, 2017) (quoting *Local 339 United Serv. Workers Union v. Advanced Ready Mix Corp*., No. 12-CV-4811, 2013 WL 685447, at *3

(E.D.N.Y. Feb. 24, 2013)) ("Although this Court has not been presented with copies of the materials on which the arbitrator relied, 'there is no reason to doubt the arbitrator's interpretation of those materials.'"), *report and recommendation adopted sub nom. Trustees of the Ne. Carpenters Health v. ITO Installations Ltd*., No. 16-CV-4558, 2017 WL 563982 (E.D.N.Y. Feb. 10, 2017); *see also Dejil Sys.*, 2012 WL 3744802, at *3 (confirming award where plaintiff did not submit all materials relied on by arbitrator).

Finally, "there is no evidence that the Arbitrator's decision was arbitrary, exceeded his authority, was procured by fraud, or was otherwise contrary to law," nor have Respondents challenged the arbitrator's award in any way. *1199/SEIU United Healthcare Workers E. v. S. Bronx Mental Health Council Inc.*, No. 13-CV-2608, 2014 WL 840965, at *8 (S.D.N.Y. Mar. 4, 2014) (citing *D.H. Blair*, 462 F.3d at 109; *Laundry, Dry Cleaning Workers & Allied Indus. Health Fund v. Jung Sun Laundry Group Corp.*, No. 08–CV–2771, 2009 WL 704723, at *5 (E.D.N.Y. Mar. 16, 2009)); *see also Fourmen Constr.*, 2016 WL 146245, at *3 (confirming award where "nothing in the record suggests that the arbitrator's award was procured through fraud or dishonesty or that any other basis for overturning the award exists") (citing *Trustees for the Mason Tenders Dist. Council Welfare Fund, Pension Fund, Annuity Fund & Training Program Fund v. Odessy Constructioncorp*, No. 14–CV–1560, 2014 WL 3844619, at *2 (S.D.N.Y. Aug. 1, 2014)) (internal quotation marks omitted).  In fact, as noted, Frank DePaola attended the arbitration proceeding in his capacity as Principal of Pomalee and did not dispute Pomalee's breach of the Stipulation or failure to pay the contributions owed.  "Where, as here, there is no indication that the arbitration decision was made arbitrarily, exceeded the arbitrator's jurisdiction, or otherwise was contrary to law, a court must confirm the award upon the timely application of any party." *Mountaintop Cabinet*, 2012 WL 3756279, at *4 (citing *In re*

*Arbitration between Gen. Sec. Nat. Ins. Co. and AequiCap Program Adm'rs*, 785 F. Supp. 2d 411, 416–17 (S.D.N.Y. 2011)); *see also D.H. Blair*, 462 F.3d at 110 (stating that "the court 'must grant' the award 'unless the award is vacated, modified or corrected.'" (quoting 9 U.S.C. § 9)).

Accordingly, the Court respectfully recommends to Judge Hurley that the Petition to Confirm the Arbitration Award be GRANTED, that the Arbitration Award be CONFIRMED in its entirety, and that judgment be entered against Respondents in the amount of $406,746.17.

### C.    Pre-Judgment Interest

Petitioner request that the Court award them the principal amount of $406,746.17 "with interest thereon accrued and accruing at the legal rate from the date of the Award, October 7, 2015, to date of entry of judgment." Sessa Aff. I ¶ 8; Sessa Aff. II ¶ 8. The Court construes this as a request for pre-judgment interest accruing from the date of the Award until the date of the Court's entry of judgment in this case. "The decision whether to grant prejudgment interest in arbitration confirmations is left to the discretion of the district court." *Abonodolo v. Milton Abeles, Inc.*, No. 10- CV-0494, 2010 WL 5491133, at *3 (E.D.N.Y. Sept. 9, 2010) (quoting *Herrenknecht Corp. v. Best Rd. Boring*, No. 06-CV-5106, 2007 WL 1149122, at *1 (S.D.N.Y. Apr. 16, 2007)), *report and recommendation adopted in part* 2010 WL 5490877 (E.D.N.Y. Dec. 30, 2010); *see Bldg. Material Teamsters Local 282, I.B.T. v. A Star Bus. Servs. of New York Corp.*, No. 11-CV-4646, 2012 WL 3568262, at *6 (E.D.N.Y. May 30, 2012) (collecting cases), *report and recommendation adopted*, 2012 WL 3230481 (E.D.N.Y. Aug. 6, 2012); *see also Blau v. Lehman*, 368 U.S. 403, 414 (1962).

In the Second Circuit, there is "a presumption in favor of prejudgment interest," *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 154 (2d Cir. 1984); *accord 1199/SEIU United Healthcare*, 2014 WL 840965, at *8; *Bldg. Material Teamsters*, 2012 WL 3568262, at *6, "particularly where 'the agreement between the parties states that an

arbitration decision is final and binding.'" *Abonodolo*, 2010 WL 5491133, at *3 (quoting

*Herrenknecht Corp.*, 2007 WL 1149122, at *1; *see Bldg. Material Teamsters*, 2012 WL

3568262, at *6 (quoting *Local 335, United Serv. Workers Union, IUJAT v. Roselli Moving &*

*Storage Corp.*, No. CV 09-3853, 2010 WL 3283553, at *3 (E.D.N.Y. July 20, 2010) *report and*

*recommendation adopted as modified*, 2010 WL 3257792 (E.D.N.Y. Aug. 13, 2010)).

"Moreover, when interest is accruing during the pendency of the action and it is explicitly

requested in the complaint, such interest will be awarded." *Trustees of the Ne. Carpenters*

*Health v. ITO Installations, Ltd*., No. CV164558, 2017 WL 564749, at *1 (E.D.N.Y. Jan. 25,

2017) (citing *Ames v. STAT Fire Suppression, Inc*., 227 F.R.D. 361, 362 (E.D.N.Y. 2005), *report*

*and recommendation adopted sub nom. Trustees of the Ne. Carpenters Health v. ITO*

*Installations Ltd*., No. 16-CV-4558, 2017 WL 563982 (E.D.N.Y. Feb. 10, 2017).  Here, the

Arbitration Procedures and Rules Governing Employer Delinquency Disputes and Audits

provides, in relevant part, that the arbitrator's award "shall be final and binding."  Arbitration

Procedures and Rules Governing Employer Delinquency Disputes and Audits Section IX(B) [DE

23-1] (emphasis added).  Moreover, Petitioner expressly requests interest in the Petition.  As

such, Petitioner is entitled to recover pre-judgment interest.

Under ERISA, "interest on unpaid contributions shall be determined by using the rate

provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26."

29 U.S.C. § 1332(g)(2).  Here, JIB's collection policy provides that interest on unpaid

contributions "shall be calculated at the rate set forth in Section 6621 of the Internal Revenue

Code."  Collection Policy, Article II, E.  This provision also establishes a "contractual basis for

the assessment of interest on delinquent non-ERISA Contributions."  *Finkel v. Detore Elec.*

*Const. Co*., No. 11-CV-0814, 2012 WL 1077796, at *9 (E.D.N.Y. Mar. 6, 2012) (citing *Finkel v.*

26

*Rico Elec., Inc.*, No. 07–CV–2145, 2009 WL 3367057, at * 3 (E.D.N.Y. Oct. 16, 2009); *Finkel v. INS Elec. Servs., Inc.*, No. 6-4862, 2008 WL 941482, at *5, *7 (E.D.N.Y. April 4, 2008)), *report and recommendation adopted*, No. 11-CV-0814, 2012 WL 1078470 (E.D.N.Y. Mar. 30, 2012); *see Finkel v. Allstate Elec. Corp.*, No. 09-CV-4071, 2010 WL 5558899, at *2 (E.D.N.Y.    Nov. 24, 2010) ("[T]he Joint Board has adopted a delinquent contribution policy that allows assessment of interest on late-paid contributions to ERISA and Non–ERISA Plans."), *report and recommendation adopted*, No. 09-CV-4071, 2011 WL 63600 (E.D.N.Y. Jan. 6, 2011).

Under 26 U.S.C. § 6621, the pre-judgment interest rate is the sum of the Federal short term-rate (which changes quarterly) plus three percentage points. *See* 26 U.S.C. § 6621(a)(2), (b)(1). In addition, such interest is to be compounded daily. *See* 26 U.S.C. § 6622(a). For the April 15, 2015 to May 20, 2015 delinquency period under the Stipulation, and the subsequent delinquency period of August 26, 2015 to September 30, 2015, the average annual short-term interest rate, plus the additional three points mandated by 26 U.S.C. § 6621, was 3%.[4] *See* Rev. Rul. 2017-18, 2017-39 I.R.B. 239, 2017 WL 4222933 (2017). Accordingly, this Court respectfully recommends to Judge Hurley that Petitioner be awarded interest on the balance owed under the Stipulation at a rate of 3% compounded annually from the date of the Award to

---

[4]     In addition to the general underpayment rate (the federal short term rate plus 3 percentage points), 26 U.S.C. Section 6621 sets forth a "large corporate underpayment rate," which is measured by the short term rate plus five percentage points. 26 U.S.C. § 6621(c). Under Section 6621, the "large corporate underpayment rate" means "any underpayment of a tax by a C corporation for any taxable period if the amount of such underpayment for such period exceeds $100,000." 26 U.S.C. §6621(c)(3)(a). Notwithstanding whether the amount of unpaid contributions exceeds the threshold value set in Section 6621(c)(3)(a), the Court notes that Petitioner has not established that Pomalee is a C corporation. Moreover, in the summary spreadsheet that Petitioner provided to the Arbitrator setting forth the amounts owed by Respondents, Petitioner applied the general underpayment rate of 3%, *see* Summary Spreadsheet annexed as Ex. A to Claimant's Mem., not the rate for "large corporate underpayments," which was 5% during the time at issue. *See* Table of Interest Rates for Large Corporate Underpayments, Rev. Rul. 2017-18, 2017-39 I.R.B. 239, 2017 WL 4222933 (2017).

the entry of judgment.  The Court further recommends that Petitioner be awarded interest at a rate of 3% compounded annually on the delinquent JIB and DSP contributions -- $124,380.17 and $74,993.01, respectively -- from the date of the Award to the date judgment is entered.  *See Trustees of the Ne. Carpenters Health v. ITO Installations, Ltd*., No. CV16-4558, 2017 WL 564749, at \*5 (E.D.N.Y. Jan. 25, 2017) (citing *Trustees of Empire State Carpenters Annuity v. Bronx Base Builders, Ltd*., No. 15-2892, 2016 WL 1032812, at \*3 (E.D.N.Y. 2016), *report and recommendation adopted sub nom. Trustees of the Ne. Carpenters Health v. ITO Installations Ltd*., No. 16-CV-4558, 2017 WL 563982 (E.D.N.Y. Feb. 10, 2017).  The Court recommends that the Clerk of the Court be directed to calculate interest in the manner set forth above.

### D.    Joint and Several Liability

Under the Stipulation, "[d]ebtors[, defined as Pomalee and DePaola,] admit that they owe, jointly and severally, contributions to the Plans in the amount of $208,774.48."  Stipulation ¶ 1.  The Stipulation further provides that "[i]n accordance with the CBA, Debtors agree to pay all weekly contributions as they become due," in addition to the $208,774.48 owed for the weeks ending April 15, 2015 through May 20, 2015.  *Id.* ¶ 6.  As discussed above, DePaola signed the Stipulation in his capacity as principal of Pomalee and in his personal capacity.  Based on this information, the Court recommends that DePaola and Pomalee be held jointly and severally liable for the Arbitrator's Award.  The Court further recommends that DePaola be held liable in his official and personal capacities.

## V.    CONCLUSION

For the foregoing reasons, this Court respectfully recommends to Judge Hurley that the Petition to confirm the Arbitration Award be GRANTED, that the Arbitration Award be CONFIRMED in its entirety, and that judgment be entered against Respondents in the sum of

$406,746.97.  Moreover, the Court recommends that Petitioner be awarded pre-judgment interest on the balance owed under the Stipulation at a rate of 3% compounded annually from the date of the Award to the Court's judgment.  The Court further recommends that Petitioner be awarded interest at a rate of 3% compounded annually on the $124,380.17 in delinquent JIB contributions and the $74,993.01 in delinquent DSP contributions, from the date of the Award to the date judgment is entered.[5]  The Court also recommends that DePaola and Pomalee be held jointly and severally liable for the amounts owed, and that DePaola be held liable in his personal and official capacities.

## VI.    OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections. Such objections shall be filed with the Clerk of the Court via ECF.  A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Denis R. Hurley, and to the Chambers of the undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Hurley prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

---

[5]    On January 31, 2018, counsel for Petitioner informed the Court, in a telephone call, that his client is not seeking any attorney's fees in addition to the amount already awarded by the Arbitrator.

**Petitioner's counsel is directed to serve a copy of this Report and Recommendation upon Respondents forthwith by overnight mail and first class mail and to file proof of service on ECF.**

SO ORDERED.

Dated: Central Islip, New York
          February 22, 2018

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
United States Magistrate Judge